**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SALAHUDDIN SMART,** | **Civil Action No. 14-4303 (FLW)** |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **ADMINISTRATIVE OFFICE OF THE COURTS, et al.,** | |
| **Defendants.** | |

**WOLFSON, United States District Judge:**

I.       **INTRODUCTION**

Plaintiff Salahuddin F. Smart is a frequent litigator in this District and has brought this six-count Amended Complaint pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.  The Court previously granted Plaintiff application to proceed *in forma pauperis* ("IFP").  At this time, the Court must review the Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.   For the reasons explained below, the Court dismisses the Amended Complaint.

II.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff's original Complaint and application to proceed *in forma pauperis* in this action were docketed on July 9, 2014, while he was still incarcerated at Jones Farm. (ECF No. 1.) The Court initially denied Plaintiff's application to proceed *in forma pauperis* because he did not

1

submit to the Clerk a complete affidavit of poverty or a certified copy of the trust fund account statement for the six month period immediately preceding the filing of the complaint, as required by 28 U.S.C. § 1915(a)(2).  (ECF No. 2.)

On August 5, 2014, Plaintiff submitted a second application to proceed *in forma pauperis*.  (ECF No. 3.)  That application was likewise deficient because the trust fund account he submitted to the Clerk did not include the entire six-month period immediately preceding the filing of the complaint as required by 28 U.S.C. § 1915(a)(2).   On November 11, 2014, Plaintiff was released from Jones Farm.  On November 14, 2014, Plaintiff notified the Court via letter that he "has officially reintegrated into society" and provided his new address. (ECF No. 4.)

On January 14, 2015, prior to the Court's screening of his Complaint, Plaintiff requested permission to submit an amended complaint "to include additional information which includes additional claims not raised in the previous complaint." (ECF No. 5.)  Plaintiff indicated in the letter that he would file "one all-inclusive complaint to be screened."   (*Id.*)  The Court denied Plaintiff's IFP for the second time and granted Plaintiff's request to file an Amended Complaint and explained that the Amended Complaint "should include all the factual allegations and causes of action Plaintiff seeks to assert."  (ECF No. 7.)  Plaintiff subsequently filed a complete IFP on the correct form and his Amended Complaint, which he characterized as an action under both Section 1983 and the Declaratory Judgment Act.  (ECF No. 10.)  The Court granted Plaintiff's IFP application.  (ECF No. 9.)

In Count 1 of his Second Amended Complaint, Plaintiff alleges that New Jersey's Intensive Supervision Program (hereafter referred to as "ISP" or "Program") procedures violate participants' Fourteenth Amendment rights to procedural due process because participants are unable to appeal decisions by the Resentencing Panel and raise issues of constitutional

dimension to a "true New Jersey state court." (ECF No. 10, Complaint at 1.)  In Count 2 Plaintiff seeks declaratory relief requiring the Administrative Office of the Courts to suspend the Program or to modify the Program to provide for appellate review.  (*Id.* at 1-2.)  Plaintiff, who was released from prison prior to the filing of his Amended Complaint, does not ask to be released from custody or reinstated to the Program.  In Count 3, however, Plaintiff seeks monetary damages from Glenn A. Grant, Acting Administrator Director of the Administrative Office of the Courts ("AOC") for his alleged failure to train the Resentencing Panel and his knowledge of or acquiescence in the violation of Plaintiff's Fourteenth Amendment rights.  (*Id.* at 2.)

Plaintiff also brings several claims premised on alleged violations of his Sixth Amendment right to effective assistance of counsel.  In Count 4 of the Amended Complaint, Plaintiff seeks declaratory relief and alleges that the New Jersey's Office of the Public Defender, ISP Office maintains a policy or practice of violating ISP participants' Sixth Amendment right to effective assistance of counsel.  (*Id.* at 2-3.)  In Count 5, Plaintiff seeks monetary damages from Larry Bembry, Deputy Public Defender in his individual supervisory capacity for failing to train public defenders "to argue the Fourteenth Amendment right to appeal before the ISP Resentencing Panel, Appellate Division, New Jersey Supreme Court, or ultimately, the United States District Court." (*Id.* at 3.)  He also alleges that this failure to train amounted to a policy, practice, or custom of permitting public defenders to provide ineffective assistance of counsel at hearings before the Resentencing Panel.  (*Id.* at 3.)  Finally, in Count 6, Plaintiff seeks monetary damages from a John Doe Public Defender for allegedly providing ineffective assistance of counsel in connection with Plaintiff's own hearing before the ISP Resentencing Panel.  The John Doe Public Defender was allegedly ineffective for (1) failing to argue for Plaintiff's constitutional right to appeal from the Panel's decision to remove him from the Program and for

3

(2) failing to argue that Plaintiff was in compliance with previous ISP directives and should not be removed from the Program.  (*Id.* at 3.)

### III.   ANALYSIS

#### a.   Standard for Sua Sponte Dismissal

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*, *See* 28 U.S.C. § 1915(e)(2)(B).  The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *Id.*  "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Furthermore, "[l]iberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.' *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

The Court begins its analysis by noting that Plaintiff's original Complaint included certain factual allegations regarding Plaintiff's own hearing before the ISP Resentencing Panel and the allegedly improper reasons he was removed from Program, and also attached correspondence between Plaintiff and officials from the Program. (ECF No. 1-1, Compl. at 5-7.) These factual allegations and the attached correspondence are <u>not</u> included in the Amended Complaint. As a general matter, an Amended Complaint "'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier

5

pleading.'" *W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (citing *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996) (emphasis added); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*; *see also Stevenson v. County Sheriff's Office of Monmouth*, No. 13-5953, 2015 WL 512423, at *8 n.2 (D.N.J. Feb. 6, 2015) (explaining same).

Here, Plaintiff's Amended Complaint does not incorporate the factual allegations in his original Complaint, and, in requesting leave to amend, Plaintiff specifically stated that he would file "one all-inclusive complaint to be screened." (ECF No. 5.) The Court granted Plaintiff's request to file an Amended Complaint and explained that the Amended Complaint "should include all the factual allegations and causes of action Plaintiff seeks to assert." (ECF No. 7.) Because Plaintiff clearly stated to the Court that he would file "one all-inclusive amended Complaint to be screened," the Court does not read the two Complaints together or analyze the factual allegations or correspondence contained in Plaintiff's original Complaint and restricts its screening to the claims and allegations contained in the Amended Complaint.

### b. Plaintiff's Section 1983 Claims

Plaintiff brings his substantive claims pursuant to Section 1983. A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects,

6

> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States and, second, that the alleged deprivation

was committed or caused by a person acting under color of state law.  *See West v. Atkins*, 487

U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Plaintiff

contends in his Amended Complaint that the ISP Resentencing Panel procedures deprive all

participants, including Plaintiff, of their Fourteenth Amendment due process rights because

participants cannot appeal decisions of the Resentencing Panel to a "true New Jersey state

court," even when the issues are of a constitutional dimension.  That is, he alleges that due

process under the Fourteenth Amendment requires that ISP participants be afforded a right to

judicial appellate review of decisions by the ISP Resentencing Panel.  He further contends that

the Public Defender Defendants have violated ISP participants' Sixth Amendment right to

effective assistance of counsel by failing to present constitutional arguments at the Resentencing

hearings, or otherwise advocate for participants' right to appeal Panel decisions, and to advise

participants to seek habeas relief in federal court.  The Court analyzes each category of claims

separately.

### i.  Plaintiff's Procedural Due Process Claim (Counts 1-3)

In his Amended Complaint, Plaintiff contends that the ISP procedures violate

participants' due process rights because there is no way for participants to appeal Panel

decisions, even where constitutional issues are raised.[1]  The New Jersey Supreme Court has

---

[1] The Court notes that challenges to parole procedures may be heard as Section 1983 actions for
injunctive and/or declaratory relief when the results of the challenges will not necessarily

described ISP as "a form of intermediate punishment between incarceration and probation for certain carefully screened [ ] offenders." *State v. Abbati*, 99 N.J. 418, 432–33 (1985). Similarly, a court in this District has described the program as "a post-sentence, post-incarceration program of judicial intervention and diversion back into the community [that] operates separately from the customary probation and parole programs." *Gresham v. Intensive Supervision Program*, No. CIV.A.99-4346JEI, 1999 WL 771075, at *1 (D.N.J. Sept. 27, 1999).

To gain entry in the ISP under current ISP procedures, an inmate goes through several levels of screening and is then recommended to the "Resentencing Panel," which consists of three judges. The Panel makes the final decision regarding entry into the program, and the applicant is either released for a 90-day trial period in the program or denied and sent back to prison. *See* State of New Jersey, Department of Probation and Parole Website, "ISP Process," available at https://www.judiciary.state.nj.us/probsup/process.htm. If a participant violates the terms of the ISP and is returned to prison, the Panel holds a hearing to consider why the participant should not be reincarcerated to serve his sentence. *State of New Jersey v. Clay*, 230 N.J. Super. 509, 516 (1989). This process is codified in subsection e of New Jersey Court Rule 3:21-10, which provides as follows:

---

invalidate state-imposed confinement or result in speedier release. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (allowing prisoners to bring § 1983 actions challenging parole denial procedures and seeking declaratory and injunctive relief to change the procedures); *see also Skinner v. Switzer*, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011) (permitting § 1983 action for injunctive relief, which challenged state statutes limiting access to post-conviction DNA evidence because DNA access would not necessarily lead to a reduction in sentence or custody level). *See Wilkinson*, 541 U.S. at 82. Plaintiff here challenges the procedures governing New Jersey's Intensive Supervision Program, *i.e.*, the lack of appeals process, and his challenge, if successful, would not necessarily lead to a reduction in sentence or custody level. Plaintiff, who is no longer incarcerated, seeks injunctive/declaratory relief and damages, but the Court need not address the propriety of his damages claim because it finds that he fails to state a claim for relief.

> "[m]otions for change of custodial sentence and entry into the
> Intensive Supervision Program . . . shall be addressed entirely to
> the sound discretion of the three-judge panel assigned to hear
> them.  Because of the nature of the program, there shall be no
> judicial review of the several levels of eligibility established under
> the program.  No further appellate review of the panel's
> substantive decision shall be afforded.  The three-judge panel shall
> have the authority to resentence offenders, in accordance with the
> applicable statutes, in the event they fail to perform satisfactorily
> following entry into the program."

N.J. Ct. R. 3:21-10(e).  At least one Court in this district has construed Rule 3:21-10(e) and the

ISP procedures in effect at the time to preclude appellate review of decisions to remove

participants from the Program, even where the removal decision presents issues of constitutional

dimension.[2]  *See Forchion v. Intensive Supervised Parole*, 240 F. Supp.2d 307 (D.N.J. 2003)

(finding that abstention doctrines did not preclude claim for preliminary injunction and § 1983

claims of First Amendment retaliation brought by ISP participant).

Although Plaintiff does not specifically cite to *Forchion*, *supra*, the Amended Complaint

borrows language from that decision, and Plaintiff's due process arguments appear to be based,

at least in part, on a misreading of that decision.  The issue before the Court in *Forchion* was

whether *Younger* or *Rooker-Feldman* abstention barred a First Amendment Retaliation claim

brought by an ISP participant who had allegedly been removed from the Program for advocating

marijuana use and/or legalization to the media.  *See Forchion*, 240 F. Supp.2d 307 at 305-308.

In declining to apply the *Rooker-Feldman* doctrine, which generally prohibits federal court

---

[2] In this regard, the Court notes that in a recent unpublished decision, the Appellate Division
dismissed an appeal pursuant to N.J. Ct. R. 3:21-10(e) and interpreted the Rule broadly to
preclude appellate review of "decisions made concerning admission or resentencing in the ISP
program." *State v. Bartolozzi*, No. A-0345-13T2, 2015 WL 3966128, at *2 (N.J. Super. Ct. App.
Div. July 1, 2015) (dismissing appeal of Resentencing Panel decision requiring participant to pay
restitution in lump sum or be removed from the Program).  The Court expressly noted, however,
that "[t]his appeal raises no issues of constitutional dimension that would require us to make an
exception to this Rule." *Id.* at *2.  So it is not entirely clear whether New Jersey Courts would
refuse to hear an appeal of ISP Resentencing Panel decision that raised constitutional concerns.

review of adverse state-court judicial decisions, the Court found that it was not reviewing an adverse judicial decision because the Resentencing Panel, though comprised of judges, performed a mixture of judicial and administrative functions and, on balance, acted much like a parole board and did not solely perform traditional judicial functions.  *Id.* at 306-07 (noting as well that Forchion had not brought the claim against the Panel members, but as a § 1983 action against the individuals who had removed him from the ISP).  In declining to apply *Younger* abstention, the Court emphasized the last prong of the test, which requires that the judicial proceeding at issue includes an adequate opportunity to raise constitutional issues.  Noting that ISP procedures do not provide for appellate review of Resentencing Panel decisions, the Court explained that "without an opportunity to appeal to a true New Jersey state court it is likely that the Plaintiff will not be afforded an adequate opportunity to raise constitutional challenges." *Id.* at 306-308.  Although the Court found that abstention did not bar Forchion from bringing his First Amendment Retaliation claim in federal court pursuant to § 1983, it did not find that Forchion's inability, as an ISP participant, to raise constitutional claims to a "true New Jersey state court" was itself unconstitutional or stated a cause of action under § 1983.[3]

Here, Plaintiff alleges that  due process under the Fourteenth Amendment requires that ISP participants be afforded a right to judicial appellate review of the Resentencing Panel decisions.  The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Under the Federal Due Process Clause, "process" is due an inmate only if the inmate first establishes a constitutionally protected liberty interest.  *Wilkinson v. Austin*, 545 U.S. 209,

---

[3] The Court notes that Plaintiff alleges in his Amended Complaint that the "ISP Resentencing Panel proceedings is [sic] not judicial in nature."  (ECF No. 10, Am. Compl. at 5.)

221 (2005) ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest.")  Liberty interests under the Fourteenth Amendment arise from either the Due Process Clause of the Fourteenth Amendment or from state law. *Meachum v. Fano*, 427 U.S. 215, 223–27 (1976).  If there is a protected interest, the Court must then determine what process is necessary to protect it.  *See Newman v. Beard*, 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted).  If the interest is not protected, no process is necessary.  Thus, at the threshold, Plaintiff must establish that he had a protected liberty interest that triggered due process rights.  *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

From the outset, it is not clear whether Plaintiff can establish a constitutionally protected liberty interest in remaining in New Jersey's Intensive Supervision Program, which the New Jersey Supreme Court has described as "a form of intermediate punishment between incarceration and probation." *Abbati*, 99 N.J. at 432–33.  It is well-established that incarcerated individuals do not have a liberty interest in remaining in a preferred facility within a state's prison system.  *See Montanye v. Haymes*, 427 U.S. 236, 242 (1976).  In contrast, the Supreme Court has found that parolees do have protected liberty interests after being released from institutional confinement.  *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (noting that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty" entitled to protection by the Fourteenth Amendment).   Thus, as explained by the Third Circuit, "a Fourteenth Amendment liberty interest may arise once an inmate is granted a substantial, albeit conditional, freedom," such as release on parole.  *Powell v. Weiss*, 757 F.3d 338, 342 (3d Cir. 2014) (citing *Morrissey*, 408 U.S. at 482.)  In *Young v Harper*, 520 U.S. 143

(1997), the Supreme Court also held that an inmate enrolled in Oklahoma's pre-parole program had a protected liberty interest entitling him to due process before he could be removed from the program. *Id.* at 148 (explaining that despite some restrictions on his movement and conduct, pre-parolee "was released from prison before the expiration of his sentence. He kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment").  The States may also, under certain circumstances, create liberty interests that are protected by the due process clause.  *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (explaining that such liberty interests are generally limited to "freedom from restraint" which imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").

The Third Circuit has not yet weighed in on whether participants in New Jersey's Intensive Supervision Program have been afforded the type of "substantial, albeit conditional, freedom" that would trigger a protected liberty interest under *Morrissey* and *Young*.   In *Asquith v. Dep't of Corr.*, 186 F.3d 407, 410 (3d Cir. 1999), the Third Circuit held that a state prisoner who lived in a strictly monitored halfway house did not have a liberty interest in remaining enrolled in New Jersey's community release program.  Crucially, the Court found that, unlike the pre-parolee *Young*, Asquinth never left institutional confinement and was not promised that his freedom would only be revoked if he did not abide by the conditions of his release.  *Id.*  At least one Court in this District, relying on *Asquinth*, has found that a participant's removal from New Jersey's Intensive Supervision Program <u>does not</u> implicate a federal or state-created liberty interest under the facts presented in that case.  *See Gresham*, 1999 WL 771075, at *5-6.

Here, the Court need not decide whether ISP participants have a federal or state-created liberty interest in remaining in the Program because Plaintiff's due process challenge inevitably

fails under the second prong of the analysis, which considers what process is due.  Plaintiff's sole challenge to the ISP procedures alleges that ISP participants are denied the right to appeal the ISP Resentencing Panel's decisions to "a true New Jersey Court."  The Supreme Court in *Morrissey* announced the minimum requirements of due process in the analogous context of parole revocation proceedings.  Those procedures <u>do not</u> include a right of appeal and have been articulated as follows: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey*, 408 U.S. at 489.  Likewise in *Young*, the Supreme Court founds that pre-parole revocation, as defined by Oklahoma's Pre-Parole program, fell within the compass of Morrissey.  *See Young*, 520 U.S. at 152; *see also Goodman v. McVey*, 428 F. App'x 125, 127 (3d Cir. 2011) (finding that where a state-created liberty interest exists, "procedural due process is generally satisfied if the procedures employed afford notice of the hearing, an opportunity to be heard, and notice of any adverse action." (citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979)).

Thus, even assuming, without deciding, that ISP participants, such as Plaintiff, have a liberty interest in remaining in ISP, neither the Fourteenth Amendment nor any state-created liberty interest requires that ISP participants be afforded a right to appeal adverse decisions, and Plaintiff has pointed to no other infirmities of constitutional dimension in the procedures

afforded to ISP participants.  As such, Plaintiff's due process claim is dismissed with prejudice

for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B).

### ii.  Plaintiff's Sixth Amendment Claims (Counts 4-6)

Plaintiff also asserts Section 1983 claims against the Office of the Public Defender, the

Deputy Public Defender in his individual supervisory capacity, and the John Doe ISP public

defender, who represented him before the Resentencing Panel.  As explained below, these claims

are not cognizable under Section 1983.

From the outset, the Office of the Public Defender is immune from suit in federal court

under the Eleventh Amendment:

> The Office of the Public Defender is an agency established by the
> State of New Jersey, in the Executive Branch, to fulfill the State's
> obligation to provide representation to indigent criminal
> defendants. The Public Defender is appointed by the Governor
> with the advice and consent of the Senate. The Public Defender is
> authorized to enter into contracts as provided by law.  The Public
> Defender must make an annual report to the Legislature on the
> operations of the Office. *See* New Jersey Statutes, Title 2A,
> Chapter 158A. Thus, the Office of the Public Defender is an arm of
> the state entitled to Eleventh Amendment immunity.

*Peterson v. Rinkus*, No. CIV.A. 10-5316 JBS, 2011 WL 2148312, at *3 (D.N.J. May 31, 2011).

(citing *Rojas v. Dodson*, Civil No. 09–4835, 2010 WL 715405 (D.N.J. March 1 2010)); *see also*

*Smith v. LaFollette*, 23 F.3d 410 (7th Cir.1994) (Wisconsin Office of the Public Defender is a

state agency entitled to Eleventh Amendment immunity).  Moreover, neither states, nor

governmental entities that are considered arms of the state for Eleventh Amendment purposes,

are persons within the meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58,

64, 70–71 and n. 10 (1989); *Grabow v. Southern State Correctional Facility*, 726 F.Supp. 537,

538–39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

Thus, the Office of the Public Defender is not a "person" subject to suit under § 1983.  For these reasons, Plaintiff's § 1983 claim against the Public Defender's Office fails as a matter of law.

Plaintiff's claims of ineffective assistance of counsel against the John Doe public defender in his individual capacity and the Deputy Public Defender in his individual supervisory capacity also fail because "ineffective assistance of appointed counsel in representing a defendant is not actionable under § 1983." [4]  *Introcaso v. Meehan*, 338 F. App'x 139, 142 (3d Cir. 2009) (citing *Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981) (no state action for the purposes of § 1983 where public defender represented defendant in criminal matter)); *see also Angelico v. Lehigh Valley Hospital, Inc.*, 184 F.3d 268, 277 (3d Cir.1999) (private attorneys were not acting under color of state law when they issued subpoenas); *Calhoun v. Young*, 2008 WL 2944638 (3d Cir. Aug.1, 2008) (public defender representing criminal defendant is not acting under color of state law); *Steward v. Meeker*, 459 F.2d 669 (3d Cir.1972) (privately-retained counsel does not act under color of state law when representing client); *Thomas v. Howard*, 455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does not act under color of state law); *Amponsah v. Boney*, No. CIV.A. 08-4992 (MLC), 2008 WL 4754869, at *2-3 (D.N.J. Oct. 27, 2008) (same).  In an attempt to avoid dismissal, Plaintiff makes conclusory allegations in his Amended Complaint stating that Defendants are "not free of the Administrative Office of the Court's control," that the Defendant "acts under color of state law performing non-judicial rather [sic] administrative and possibly investigatory functions" and that "[t]he [D]efendant does

---

[4] To the extent that Plaintiff may be attempting to set forth either a legal malpractice or an ineffective assistance of counsel claim against any individual attorney in the Public Defender's Office, such claims are not proper § 1983 claims.  *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (petition for writ of habeas corpus proper for ineffective assistance of counsel claim); *Shaw v. Stackhouse*, 920 F.2d 1135 (3d Cir. 1990) (§ 1983 is designed to address constitutional deprivations, not torts).  The Court does not construe the amended complaint as raising legal malpractice claims under state tort law.

not perform a lawyer's traditional function as counsel to a defendant in a criminal proceeding." (ECF No. 10, Am. Compl. at 2-3.)  These conclusory allegations cannot save Plaintiff's claims from dismissal.

For these reasons, Plaintiff's ineffective assistance of counsel claims against the Public Defender Defenders, as stated in his Amended Complaint, are dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

## IV.   **CONCLUSION**

For the reasons explained in this Opinion, Plaintiff's Amended Complaint is dismissed with prejudice in its entirety for failure to state a claim, pursuant to 28 U.S.C. §1915(e)(2)(B). His request for declaratory relief is also denied.[5]  An appropriate Order follows.

s/Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: February 17, 2016

---

[5] Having dismissed Plaintiff's substantive claims, the Court need not separately address Plaintiff's request for declaratory relief. The federal Declaratory Judgment Act is procedural and is not an independent basis for federal jurisdiction, so an action cannot proceed as a declaratory judgment action alone.  *See MIIX Ins. Co. v. Associated Women's Health Specialists, P.C.*, No. CIV. 07-1635, 2007 WL 4163999, at *8 (D.N.J. Nov. 19, 2007) (explaining that "[t]he Declaratory Judgment Act is not an independent basis for federal subject matter jurisdiction; rather, "it gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments") (citing *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir. 1989)); *see also Moore v. Democratic Cty. Executive Comm. of Philadelphia*, No. CIV.A. 14-3847, 2014 WL 5780879, at *7 (E.D. Pa. Nov. 6, 2014) (citing *Luis v. Dennis*, 751 F.2d 604, 607 (3d Cir. 1984) (noting the Declaratory Judgment Act is "procedural in nature" and does not itself confer jurisdiction)); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F.Supp. 1055, 1063–64 (E.D. Pa. 1996)( dismissing declaratory judgment and state law claims after concluding that the plaintiffs' federal antitrust claims must be dismissed and finding no basis for diversity jurisdiction), *aff'd*, 124 F.3d 430 (3d Cir. 1997)).